## 65IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | |
|---|---|
| TERRY KEY, | |
| Movant, | CIVIL ACTION NO.: 2:23-cv-26 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No.: 2:21-cr-3) |
| Respondent. | |

## ORDER and REPORT AND RECOMMENDATION

Movant Terry Key ("Key") filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255.  Doc. 1.  Respondent filed a Motion to Dismiss, and Key filed a Response.  Docs. 7, 13.  For the following reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Key's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Key a Certificate of Appealability and *in forma pauperis* status on appeal.  I **DENY** Key's request for an evidentiary hearing.

## BACKGROUND

Key and a co-defendant were indicted for: possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).  United States v. Key, Case No. 2:21-cr-3 ("Crim. Case"), ECF No. 1.  If convicted, Key faced a 20-year sentence on the controlled substance count and at least 5 years, up to life, on the § 924(c) count, and at least 10 years on the

§ 922(g) count.  Crim. Case, ECF No. 2.  Key's appointed counsel, J. Wrix McIlvaine, filed several pretrial motions on Key's behalf, including a motion to suppress evidence obtained based on the search warrant, arguing the affidavit supporting the search warrant failed to establish probable cause.  Crim. Case, ECF No. 32; id. at ECF Nos. 48–53.  I recommended the Court deny the motion to suppress based on my finding that probable cause existed for the issuance of the warrant and, even if it did not, the good-faith exception barred application of the exclusionary rule.  Crim. Case, ECF No. 76.  The Honorable Lisa Godbey Wood adopted the Report over Key's objection.  Crim. Case, ECF Nos. 77, 78.

The Government then advised the Court that Key wished to enter a plea agreement, whereby he agreed to plead guilty to counts 1 and 2 of the indictment.  Crim. Case, ECF Nos. 84, 86.  Based on that agreement, Key would be subject to no more than 20 years in prison on the controlled substance count and to a consecutive, mandatory sentence of at least 5 years and up to life in prison on the § 924 count.  Crim. Case, ECF No. 86, pp. 2–3.

Judge Wood conducted a Rule 11, or change of plea, hearing.  Crim. Case, ECF No. 85.  At the outset of the hearing, Judge Wood informed Key the purpose of the hearing was to ensure: (1) Key understood the case pending against him and all of the rights he would waive if Judge Wood accepted his plea; (2) there was a factual basis for the finding of guilt on the charges to which Key was pleading guilty; and (3) pleading guilty was what Key wanted to do.  Crim. Case, ECF No. 116, pp. 2–3.  Key confirmed that no one was making him, pushing him, or leaning on him to change his plea.  Id. at 3.  During the plea hearing, Assistant United States Attorney ("AUSA") Marcela Mateo provided the factual basis for Key's plea agreement by calling Drug Enforcement Agency Task Force Officer Ryan Alexander ("TFO Alexander") to testify.  Id. at 20–23.  Key stated he did not disagree with anything TFO Alexander presented and admitted to

the truth of TFO Alexander's testimony.  Id. at 23–24.  Judge Wood accepted Key's guilty plea, adjudged him guilty of counts 1 and 2 of the indictment, and directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR").  Id. at 24.

Judge Wood conducted Key's sentencing hearing on January 12, 2022.  Crim. Case, ECF No. 96.  Judge Wood reminded Key he appeared with Mr. McIlvaine for the Rule 11 hearing and she directed the Probation Office to prepare a PSR.  Crim. Case, ECF No. 115, p. 2. Judge Wood adopted the probation officer's factual statements and conclusions about the applicable advisory Sentencing Guidelines, resulting in a total offense level of 15 and criminal history category of VI.  Id. at 3.  The Guidelines' range was 41 to 51 months' imprisonment on count 1 and 60 months' imprisonment on count 2, to be served consecutively.  Id.  Mr. McIlvaine offered argument on Key's behalf.  Id. at 4–7.  The AUSA presented argument in support of the recommended 108-month sentence.  Id. at 8.  Judge Wood allowed Key to address the Court.  Id. at 8–9.  Judge Wood then informed Key she had read the PSR, listened to the attorneys and Key, thought about the 18 U.S.C. § 3553 factors, and considered Key's extensive criminal history.  Id. at 9.  Based on all of these factors, Judge Wood sentenced Key to a 106-month sentence, which was comprised of 46 months on count 1 and a consecutive term of 60 months on count 2.  Id. at 10.  Key did not file any direct appeal.

Key filed the instant § 2255 Motion.  Doc. 1.  The Government filed a Motion to Dismiss.  Doc. 7.  Key filed a Response.  Doc. 13.  This matter is fully briefed and ready for review.

## DISCUSSION

I.    **The Court Should Deny Key's Claims of Ineffective Assistance of Counsel**

A movant bears the burden of showing entitlement to relief under § 2255.  Beeman v. United States, 871 F.3d 1215, 1222 (11th Cir. 2017).  A movant is not entitled to relief if his claims "are merely conclusory allegations unsupported by specifics, contentions that are wholly incredible on the face of the record, or so patently frivolous as to warrant summary dismissal." Adams v. United States, No. 19-11068-C, 2019 WL 4643730, at *1 (11th Cir. Aug. 20, 2019) (citing Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citations omitted)).

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001), and on appeal, Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Strickland, 466 U.S. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind

of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297,

1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004)

(alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Id. (internal citation omitted).  "The prejudice prong requires a petitioner to

demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at

1312–13.  "The likelihood of a different result must be substantial, not just conceivable."

Harrington v. Richter, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly

presumed to have rendered adequate assistance and made all significant decisions in the exercise

of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S.

at 690).  "If a petitioner cannot satisfy one prong, [a court] need not review the other prong."

Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "The burden of persuasion is

on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that

counsel's performance was unreasonable, and that []he was prejudiced by that performance."

Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

   "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of

counsel's challenged conduct on the facts of the particular case, viewed as of the time of

counsel's conduct." Strickland, 466 U.S. at 690.  "The cases in which habeas petitioners can

properly prevail on the ground of ineffective assistance of counsel are few and far between."

James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11,

2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States,

Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v.

Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U .S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

### A.    During Plea Stage

Key asserts Mr. McIlvaine improperly advised him to answer the Court's questions in the affirmative during the plea proceedings so the Court would accept his plea. Doc. 1 at 4. Key states he did not want to accept the plea offer because the "so-called 'methamphetamine'" the Government alleged that he possessed was nothing more than residue, which was not enough in quantity to trigger the Sentencing Guidelines. Id. In addition, Key states Mr. McIlvaine knew or should have known the Government never produced a lab report, which would have shown the amount was only residue. Id.

Respondent notes that Key pleaded guilty to possession of a "mixture and substance containing a detectable amount of methamphetamine" with intent to distribute. Doc. 7 at 11. The Government recognizes the recovered methamphetamine was less than a gram, but this did not mean Key could not be convicted of the § 841 offense. The charged offense required only a detectable amount of methamphetamine, and the Government contends there was "ample circumstantial evidence" demonstrating Key intended to distribute methamphetamine. Id. The Government states less than one gram of methamphetamine is enough for a base level offense of

12 under the Guidelines (i.e., enough to warrant the application of the Guidelines). Id. at 13. The Government also states no competent attorney would have advised Key that the Government's evidence would not support a conviction for the offense charged.

When a defendant enters a guilty plea in accordance with Rule 11, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary.[1] United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases." United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. Cannon v. Jones, Case No. 3:15CV213, 2017 WL 990583, at *6 (N.D. Fla. Feb. 7, 2017), report and recommendation adopted, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (citing McMann v. Richardson, 397 U.S. 759, 770–71 (1970)).

In addition, a defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated that "the representations of the defendant . . . at such a hearing, as well as any findings made by the judge

---

[1] Respondent notes it is unclear from Key's Motion whether he intended to argue that his plea was not entered into knowingly and voluntarily. Doc. 7 at 13 n.4. The Court addresses any potential contention Key arguably makes as to the voluntariness of his plea.

accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. Id.

When "a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." Lee v. United States, 582 U.S. 357, 364 (2017). "Instead, when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Spriggs v. United States, 703 F. App'x 888, 890 (11th Cir. 2017) (internal citation and punctuation omitted). A movant "alleging prejudice with respect to the plea process must demonstrate a reasonable probability that he would have gone to trial rather than enter the plea, but for counsel's errors." Martinez v. Sec'y, Fla. Dep't of Corr., 684 F. App'x 915, 922 (11th Cir. 2017) (citing Lafler v. Cooper, 566 U.S. 156, 163 (2012)). "Further, the decision to reject the plea must have been 'rational under the circumstances.'" Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). In a plea situation, the focus of inquiry under the performance prong of Strickland is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 56–57 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Cannon, 2017 WL 990583, at *10 (citing Strickland, 466 U.S. at 689).

Prior to the trial of this case, Key and Mr. McIlvaine were able to reach a plea agreement with the Government, whereby Key agreed to plead guilty to counts 1 and 2 of the indictment. Crim. Case, ECF No. 86. By pleading guilty to these two offenses, Key faced a statutory sentence of no more than 20 years in prison on the § 841 count and a mandatory minimum sentence of 60 months but no more than life in prison on the § 924 count, to be served consecutively to his sentence on count 1. Id. at 2–3. The plea agreement set forth the elements and factual bases of the offenses to which Key was pleading guilty. Specifically, the elements to prove the § 841 offense were: (1) Key knowingly or intentionally possessed a mixture or substance containing a detectable amount of methamphetamine; (2) the substance was, in fact, methamphetamine; and (3) Key possessed methamphetamine with intent to distribute. Id. at 1. The elements to prove the § 924 offense were: (1) Key committed the elements of the drug trafficking offense in count 1; and (2) Key knowingly possessed a firearm in furtherance of the drug trafficking offense. Id. at 2. The factual bases for the plea concerned events occurring in Wayne County, Georgia, on June 24, 2020, after law enforcement officials executed a search warrant. Id. at 2. Key pleaded guilty to the offenses and agreed to the accuracy of the factual basis. Id. at 12. Additionally, Key affirmed he had read and "carefully reviewed" the plea agreement with Mr. McIlvaine, understood each provision of the agreement, and voluntarily agreed to it. Id.

Key appeared before Judge Wood for his Rule 11 proceeding. Crim. Case, ECF No. 116. Judge Wood addressed Key and informed him the purpose of the hearing. Judge Wood inquired whether anyone had made, pushed, or leaned on Key to offer to plead guilty, and he said no one

had done so and pleading guilty was what he wanted to do.  Id. at 2–3.  After being sworn in,

Judge Wood told Key he did not have to plead guilty.  Id. at 6.  Judge Wood also told Key, if he

chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by

jury; a presumption of innocence that would follow throughout that trial; the assistance of trial

counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call

witnesses on his behalf; and testify himself or remain silent.  Id. at 6–7.  Judge Wood cautioned

Key he would be waiving these rights if he pleaded guilty and she accepted that guilty plea.  Id.

at 7.  Key stated he understood.  Id. at 8.  Key also stated he and Mr. McIlvaine had had the

opportunity to talk about the facts and the law pertaining to his case and the indictment filed

against him, as well as about the proposed plea agreement and the application of the advisory

Sentencing Guidelines in general terms.  Id.  When Judge Wood asked Key whether he was

satisfied with Mr. McIlvaine's representation, he replied he was and had no complaints

whatsoever about Mr. McIlvaine.  Id.

        Judge Wood reviewed the indictment with Key and the essential elements of the crimes

charged.  Id. at 9.  Judge Wood noted under the agreement the parties wished to enter, Key

agreed to plead guilty to count 1 and count 2 of the indictment.  Judge Wood also explained that,

for Key to be convicted of these offenses, the Government would have to prove the essential

elements of these offenses.  The elements of count 1 were: first, Key knowingly or intentionally

possesses a mixture or a substance containing a detectable amount of methamphetamine, a

Schedule II controlled substance; second, the substance was methamphetamine; and third, Key

possessed methamphetamine with the intent to distribute it.  Id. at 10–11.  The elements of count

2 were: first, Key committed the elements of the drug trafficking offense, which are prosecutable

in federal court; and second, Key knowingly possesses a firearm in furtherance of the drug

trafficking offense in count 1.  Id. at 11.  By pleading guilty, Judge Wood noted Key was

admitting that the essential elements of the crimes to which he intended to plead guilty were

satisfied.  Id.  Judge Wood advised Key of the maximum sentences she could impose.  Id. at 11–

12.  Judge Wood ensured Key understood that she would have to impose at least a five-year

sentence on count 2, to run consecutively to any sentence on count 1 because § 924 carries a

mandatory minimum sentence.  Id. at 12.  Moreover, Judge Wood explained to Key, in imposing

a sentence upon him, she would have to take into consideration the advisory Sentencing

Guidelines and the factors set forth in 18 U.S.C. § 3553.  Id. at 13.  In her consideration of his

sentence, Judge Wood also explained some of the "major factors" she would have to take into

account were Key's criminal history, his role in the offense, and whether he was truthful and

accepted responsibility for his actions.  Id. at 13–14.  Key affirmed no one had promised him an

exact sentence and Mr. McIlvaine had his permission to negotiate a plea agreement with the

Government.  Id.

Judge Wood asked the AUSA to summarize the provisions of the plea agreement.  AUSA

Mateo stated the material provisions were:

> The defendant will plead guilty to [c]ounts 1 and 2 of the indictment.  The
> Government will not object to a recommendation by the [U.S.] Probation Office
> that the defendant receive an appropriate reduction in offense level for acceptance
> of responsibility pursuant to the sentencing guidelines.
>
> Contained in the plea agreement, Your Honor, . . . is a provision in which the
> Government and the defendant have discussed in great length the defendant's
> criminal history.  We have looked at the certified convictions.  We've also spoken
> to the US Probation Office and there [are] just some questions without us being
> able to further dive . . . into his criminal history, so we felt that in the interest of
> justice that, should he be characterized as a career offender for purposes of
> sentencing under the guidelines as determined by the final probation—excuse me,
> by the final presentence report, the parties agree that then the Government would
> move to dismiss [c]ount 2 before sentencing.  However, if he's not characterized
> as a career offender, then we will continue moving forward with both counts.

. . .

> At sentencing, the Government will move to dismiss [c]ount 3 that remains pending.
>
> Also contained in the plea agreement are various waivers in which the defendant waives his right to appeal on any ground with only three exceptions.  Also[,] the defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to[,] a 28 [U.S.C. §] 2255 motion, the only exception being that the defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel.
>
> Also[,] the defendant waives all rights to request information about the investigation and prosecution of his case under the Freedom of Information Act or the Privacy Act, and lastly[,] the defendant waives the protections of Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence.

Id. at 15–16.  Judge Wood inquired whether Key's signature was above Mr. McIlvaine's on the plea agreement and whether Key had reviewed and initialed every page of the agreement, and Key answered in the affirmative.  Id. at 16–17.  Judge Wood asked Mr. McIlvaine and Key if AUSA Mateo's summarization of the plea agreement was consistent with the agreement Mr. McIlvaine negotiated and Key signed, and they stated it was.  Id. at 17.  Key confirmed that no one had made him any promises about the outcome of his case, other than the provisions of his plea agreement.  Id.

Judge Wood then asked Key whether he wished to still plead guilty to counts 1 and 2 of the indictment because he was in fact guilty of these offenses, and he answered in the affirmative.  Id. at 19.  Judge Wood also asked Key whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did.  Id.  Judge Wood determined Key's offer to plead guilty was "knowing" and "voluntary."  Id. at 20.  Key agreed. Id.

The Government provided a factual basis for Key's plea of guilty by calling TFO Alexander to testify. Id. TFO Alexander testified that law enforcement officials conducted an investigation of Key in Wayne County, Georgia, including surveilling Key at Motel Jesup, seeing Key involved in hand-to-hand transactions, and receipt of a call from a confidential informant who advised that Key was selling methamphetamine from Motel Jesup. Id. at 21. As a result, law enforcement officials were able to obtain a search warrant for Key's motel room and executed that warrant on June 24, 2020. Id. at 21–22. TFO Alexander also testified that when Wayne County Sheriff's deputies made contact with Key, Key slammed the door and ran to the bathroom to flush an object. Law enforcement officials seized a number of items from the motel room, including multiple digital scales, suspected methamphetamine, cell phones, a Taurus .45-caliber gun, and over $1,000. Id. at 22. Key's co-defendant was captured on video stating they did not have much left because Key "flushed most of it." Id. at 23. Law enforcement officials sent the suspected methamphetamine for further analysis, which revealed the substance was methamphetamine.

Judge Wood heard from Key again. Key stated that he agreed with the Government's factual basis and admitted to the truth of TFO Alexander's testimony. Id. at 23–24. Judge Wood accepted Key's plea and adjudged him guilty of counts 1 and 2 of the indictment, after she verified that Key recalled signing the agreement. Id. at 24. Judge Wood advised Key that a probation officer would prepare a PSR and the Court would conduct a sentencing hearing after the Government and Mr. McIlvaine received copies of the PSR.

To be clear, Judge Wood informed Key at the outset of the Rule 11 hearing the purpose of the hearing was for him to understand the case that was pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what

Key wanted to do after consultation with his attorney. After telling Key he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing, Key averred no one was forcing him to plead guilty and pleading guilty was what he wanted to do. Judge Wood discussed the specific rights Key was afforded if he chose to persist with a not guilty plea and advised Key he would waive those rights if he pleaded guilty and she accepted his plea. Key stated he had spoken with Mr. McIlvaine about the facts and law of his case, including the plea agreement. Key verified AUSA Mateo's summary of the plea agreement was consistent with the plea he had signed. Judge Wood asked Key whether he wanted to plead guilty because he was, in fact, guilty of counts 1 and 2 of the indictment, and he answered in the affirmative. Key declared he understood the rights and privileges he was waiving by pleading guilty and proceeded to do so. Judge Wood determined Key's guilty plea was knowing and voluntary. TFO Alexander then provided a factual basis for Key's plea, and Key agreed with the Government's factual basis. Judge Wood accepted Key's plea and adjudged him guilty of the two offenses. See Crim. Case, Doc. 116.

Key's assertion that Mr. McIlvaine rendered ineffective assistance during the plea proceedings is belied by the record and is without merit. If Key had not entered a plea agreement, proceeded to trial on the three counts of the indictment, and been convicted on these counts, he would have faced a Guidelines' range of 41 to 51 months' imprisonment and a statutory maximum of 20 years' imprisonment on the drug count, up to life on the § 924(c) count, and up to 10 years' imprisonment on the § 922(g) count. Doc. 13 at 3; Crim. Case, ECF Nos. 2, 93.[2] Because Key pleaded guilty to count 1 of the indictment, his sentence of 46 months'

---

[2]    The probation officer noted the Guidelines range for count 2 was the statutory mandatory minimum and could not run concurrently with any other term of imprisonment. The officer also noted, had Key been convicted of count 3, this would have had no impact on the Guidelines calculation. Crim. Case, ECF No. 93.

imprisonment on that count was within the Guidelines range as a result of the guilty plea and was lower than the Guidelines' range had he not pleaded guilty and received a three-point level reduction for acceptance of responsibility.  Crim. Case, ECF No. 93 (deducting three points for acceptance of responsibility to the 18-point base offense level); U.S.S.G. Sent. Table (showing a range of 57 to 71 months' imprisonment for an 18-point base offense level and a criminal history category of VI) (2021 ed.).  The Court notes Key's assertion that he would not have pleaded guilty to the drug count but for Mr. McIlvaine's error in advising Key to answer the Court's questions in the affirmative because there was "nothing more than residue."  Doc. 13 at 3.  But this assertion is conclusory and, as discussed below in § I.C., completely without merit.

What is more, the record before the Court—including the statements Key rendered under oath and under penalty of perjury—contradicts any suggestion that Mr. McIlvaine rendered ineffective assistance during the plea process or that Key did not knowingly and voluntarily enter into his plea.[3]  Further, and most importantly here, Key has failed to show that not accepting the plea agreement would have been rational under the circumstances, Martinez, 684 F. App'x at 922, and instead offers only conclusory or contradicted allegations.  Accordingly, Key is not entitled to his requested relief, and the Court should **GRANT** Respondent's Motion to Dismiss and **DENY** this portion of Key's Motion.

B.    **Failure to Request Franks Hearing**

Key asserts Mr. McIlvaine did not request a Franks hearing to properly challenge the search warrant and accompanying affidavit.  Doc. 1 at 5.  According to Key, the initial affidavit lacked relevant facts and three days later, another affidavit was submitted.  Id.

---

[3]    Key does not actually make any argument his plea was not entered knowingly and voluntarily, but I address it for the sake of completeness.

Respondent asserts Mr. McIlvaine challenged the finding of probable cause for the state search warrant by filing a motion to suppress in this Court. Doc. 7 at 14. However, the Court disagreed with Mr. McIlvaine and found probable cause existed. Thus, Respondent argues that Key fails to allege any deficient performance or actual prejudice on this ground. Id.

Mr. McIlvaine filed a motion and sought to suppress all evidence obtained under the search warrant. Crim. Case, ECF No. 32. Mr. McIlvaine asserted, "The affidavit is completely devoid of any facts or information that could reasonable lead any [j]udge or lay person to determine that probable cause existed" to substantiate a belief that drugs or other contraband were present or criminal activity was occurring in Key's motel room. Id. at p. 3. Mr. McIlvaine argued that the state magistrate judge should not have issued the search warrant. Id. at p. 5. I conducted a hearing on this and another motion and recommended the Court deny the motion to suppress. Crim. Case, ECF No. 76. In so doing, I observed Key had the burden of establishing the warrant was defective. Id. at p. 5. I then conducted analysis and determined the warrant was supported by probable cause, as set forth in the affidavit. Id. at pp. 8–12, 16. Judge Wood adopted this recommendation as the opinion of the Court, over Key's objections. Crim. Case, ECF Nos. 77, 78.

Mr. McIlvaine did challenge the finding of probable cause established in the search warrant affidavit, albeit not under Franks v. Delaware, 438 U.S. 154 (1978). In Franks, the United States Supreme Court determined a court must conduct a hearing where a defendant makes a substantial showing that a false statement was included in a warrant affidavit and the false statement was necessary to the probable cause finding. 438 U.S. at 155–72. After the hearing, if the defendant establishes that the false statement was included in the affidavit and led to the probable cause finding, the warrant must be stricken and the evidence obtained as a result

excluded.  Id.  Key had a hearing on the probable cause challenge, and his challenge was

rejected.  Key presents no evidence or argument showing that had Mr. McIlvaine changed the

posture of the suppression motion as to one regarding the veracity of the information contained

in the warrant affidavit, Key would have been successful in obtaining a hearing on this claim or

having evidence suppressed.  Even now, Key fails to state any challenge to the veracity of the

information contained in the warrant affidavit.  Doc. 1 at 5; Doc. 13 at 4–5.  Key makes nothing

more than conclusory assertions in this regard, and this is insufficient to meet one or both

Strickland prongs.  The Court should **GRANT** this portion of Respondent's Motion to Dismiss

and **DENY** this portion of Key's Motion.

> **C.      Failure to Object to PSR**

Key contends that Mr. McIlvaine failed to file an objection to paragraphs 8 and 9 of the

PSR, in which the probation officer attributed approximately 21 grams of methamphetamine

mixture to Key, even though Key always told Mr. McIlvaine there was no evidence of actual

methamphetamine, only residue.  Doc. 1 at 6.  Key asserts the Guidelines distinguish between

methamphetamine and actual methamphetamine mixture and the methamphetamine the officers

seized was nothing more than residue.  Doc. 13 at 6–7.

The Government contends the probation officer correctly calculated the drug quantity

attributable to Key.  Thus, the Government contends Key can show neither deficient

performance nor actual prejudice based on Mr. McIlvaine's lack of objection to the PSR.  Doc. 7

at 15–16.

The probation officer did not attribute a specific quantity of methamphetamine to Key or

make a distinction between residue and mixture based on what officers seized.  Instead, the

probation officer noted the quantity of methamphetamine law enforcement officials seized from

Key's motel room did not "adequately reflect the scale of the offense conduct," given the evidence that Key had flushed methamphetamine down the toilet to prevent its seizure. Crim. Case, ECF No. 93, p. 5.  Under the Guidelines, the probation officer noted, where there is no drug seizure or the amount seized does not reflect the scale of the offense, the Court can estimate quantities based on matters such as the price generally obtained for the controlled substance, similar transactions, or financial records.  Id.  In Key's case, the probation officer noted the preponderance of evidence reflected that Key distributed methamphetamine to at least 13 different people over a 6-day period and the $1,053 recovered from Key's room was conservatively equivalent to 21 grams of methamphetamine (mixture).  Id.

Key fails to demonstrate any basis upon which Mr. McIlvaine could have lodged a meritorious objection to the quantity of methamphetamine attributable to Key.  The probation officer based the calculation on evidence other than what was actually recovered, as the Guidelines and case law allow.  See U.S.S.G. § 2D1.1, comment n.5; United States v. Stephens, 296 F. App'x 5, 7 (11th Cir. 2008) ("[M]oney attributable to the drug transactions may be converted to the equivalent amount of drugs for purposes of determining the drug quantity." (quoting United States v. Tokars, 95 F.3d 1520, 1542 (11th Cir. 1996)).  Even if Mr. McIlvaine had rendered deficient performance by failing to object to the probation officer's factual finding—a conclusion not reached—Key cannot show he suffered actual prejudice as a result of any alleged deficient performance.  As Key does not meet both prongs of the Strickland test, the Court should **GRANT** this portion of Respondent's Motion to Dismiss and **DENY** this portion of Key's § 2255 Motion.

## II.    Evidentiary Hearing

Key asks for an evidentiary hearing as a separate form of relief.  Doc. 1 at 12.  But

§ 2255 does not require the Court hold an evidentiary hearing if "the motion and the files and

records of the case conclusively show that the prisoner is entitled to no relief[.]"  Winthrop-

Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).

The Eleventh Circuit has explained:

> If the petitioner alleges facts that, if true, would entitle him to relief, then the
> district court should order an evidentiary hearing and rule on the merits of his
> claim.  However, a district court is not required to hold an evidentiary hearing
> where the petitioner's allegations are affirmatively contradicted by the record, or
> the claims are patently frivolous.

United States v. Yadigarov, 840 F. App'x 487, 490 (11th Cir. 2021) (internal punctuation and

citations omitted); see also Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) ("A

hearing is not required on patently frivolous claims or those which are based upon unsupported

generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively

contradicted in the record.").  Moreover, a movant is not entitled to an evidentiary hearing where

he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face

of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991)

(citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238–39 (11th Cir. 2004).

Because Key's claims lack merit as a matter of law or are otherwise affirmatively contradicted

by the record, no evidentiary hearing is necessary.  I **DENY** his request.

## III.    Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Key leave to appeal *in forma pauperis*.  Though Key has not

yet filed a notice of appeal, it would be appropriate to address this issue in the Court's order of

dismissal.  Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in*

*forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An

appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it

to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of the submissions in this case and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability.  If the Court adopts this recommendation and denies Key a Certificate of Appealability, Key is advised he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts.  Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DENY** Key's § 28 U.S.C. § 2255 Motion.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Key *in forma pauperis* status on appeal and a Certificate of Appealability. I **DENY** Key's request for an evidentiary hearing.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file

timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 28th day of March, 2025.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA